IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOE NATHAN MACKLIN, ) | **Case No.** |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| ) | |
| ) | **COMPLAINT FOR VIOLATIONS OF** |
| ) | **THE CIVIL RIGHTS ACT OF 1871, 42** |
| v.  ) | **U.S.C. § 1983, AND TENNESSEE** |
| ) | **COMMON LAW** |
| ) | |
| ) | |
| SHELBY COUNTY, TENNESSEE, a ) | **JURY TRIAL DEMANDED** |
| Tennessee municipality; CORRECT CARE ) | **PURSUANT TO FED. R. CIV. PRO. 38(a)** |
| SOLUTIONS, LLC, a Kansas limited ) | **& (b)** |
| liability company; STEVE FARRIS, in his ) | |
| individual and official capacity as a Shelby ) | |
| County Sheriff's Deputy; OFFICER ) | |
| NEWMAN, in his individual capacity and ) | |
| his official capacity as a Shelby County Jail ) | |
| employee; LIEUTENANT VARNER in his ) | |
| individual capacity and his official capacity ) | |
| as a Shelby County Jail employee; DANA ) | |
| D. MOORE, RN, in her individual capacity; ) | |
| VERNITA WELLS, LPN, in her individual ) | |
| capacity; SANDRA WILSON, RN, in her ) | |
| individual capacity; PAMELA ) | |
| WASHINGTON, NP, in her individual ) | |
| capacity; JANE/JOHN DOES A-E, in their ) | |
| individual capacity and her official capacity ) | |
| as jail healthcare providers; JANE/JOHN ) | |
| DOES 1-10, in their individual capacities ) | |
| and official capacities as Shelby County Jail ) | |
| employees. ) | |

DEFENDANTS.

**COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Joe Nathan Macklin, by and through his designated attorneys, for his Complaint alleges as follows:

## I.

## NATURE OF THE ACTION

1. This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 and Tennessee statutory and common law in order to remedy Defendants actions in causing Plaintiff to be deprived of his constitutional rights by subjecting him to unlawful detention in the Shelby County Jail during which time they negligently, knowingly and recklessly deprived him of basic, necessary medical care for severe medical conditions, resulting in conditions of confinement so severe as to shock the conscience of the Court. Plaintiff was arrested and detained on a warrant for John Malone and as a result suffered unlawful seizure and detention and physical and emotional harm.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that the federal claims substantially predominate over state law claims and the claims are so related that they form part of the same case or controversy.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

4.     Plaintiff Joe Nathan Macklin is a resident of Shelby County, Tennessee.

5.     Defendant Shelby County, Tennessee (hereinafter "Defendant Shelby County" or "the County") is a Tennessee municipality liable for its policies, customs, and practices, is a party defendant to this matter. Service upon Defendant Shelby County is perfected by service upon the County Attorney, Marlinee Iverson, at 160 N. Main St., 9th Floor, Memphis, Tennessee 38103.

6.     Defendant Correct Care Solutions, LLC. (hereinafter referred to "CCS") is a limited liability company organized under the laws of the State of Kansas authorized to do business in Tennessee, with its principle place of business located at 1283 Murfreesboro Pike, Suite 500, Nashville, Tennessee 37217. Service of process may be made by serving its registered agent, Corporate Creations Network, Inc. at 205 Powell Place, Brentwood, Tennessee 37027. CCS is a private entity hired by Shelby County, Tennessee to provide healthcare services at the Shelby County Jail. At all times relevant to this Complaint, Defendant CCS had an obligation to provide appropriate medical care to Plaintiff when he was incarcerated at the Shelby County Jail, or any other place Defendant CCS treated or had an obligation to treat him, and to arrange for him to be evaluated by medical staff (on-site or off-site, as appropriate) when necessary. Defendant CCS was responsible for the continuity of care received or not received by Plaintiff throughout his custody at the Shelby County Jail. Defendant CCS is vicariously liable for the acts or omissions of the individuals responsible for providing care to Plaintiff at the Shelby County Jail and any and all agents (actual or apparent) who were negligent in the care/treatment they provided Plaintiff. CCS is also responsible for the violation of Plaintiff's rights under the

Fourteenth Amendment to the United States Constitution as a result of its policies or customs. Plaintiff alleges that all agents of Defendant CCS including but not limited to nurse practitioners, nurses, technicians, staff and any and all other health care providers who treated or should have treated and failed to treat Plaintiff or who were in any way involved in Plaintiff's care or the failure to provide adequate care at the Shelby county Jail were acting in the course and scope of their agency and/or employment with CCS at all times relevant to this action. By way of alternative pleading, and upon information and belief, all of the nurse practitioners, nurses, technicians, staff, and other health care providers who cared for or treated or should have treated and failed to adequately treat Plaintiff during all times relevant to this claim were apparent agents of CCS. Upon further information and belief, CCS knowingly permitted the healthcare providers to hold themselves out as agents of CCS and/or CCS held out the healthcare providers as agents and Plaintiff reasonably believed they were agents of CCS and relied upon that belief. Moreover, CCS was responsible for developing and implementing policies, protocols, procedures and systems for the purpose of providing individuals at the Shelby County Jail with reasonable and safe care and with ensuring that the rights of inmates under the 14th Amendments to the United States Constitution were protected at all times relevant to this claim and failed to do so with regard to Plaintiff. CCS owed a duty to Plaintiff and breached that duty and is subject to liability in this case. At all times relevant to this Complaint, CCS acted under color of law, performed government functions, was entwined in a symbiotic relationship with Shelby County, and was otherwise engaged in state action consistent with the Supreme Court's analysis in Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288 (2000). CCS is a "person" within the meaning of 42 U.S.C. § 1983.

7.     Defendant Dana D. Moore RN ("Defendant Moore"), who resides at 640 E. Holmes Road, Memphis, Tennessee 38109, Defendant Vernita Wells, LPN ("Defendant Wells"), who resides at 507 Fox Valley Drive, Memphis, Tennessee 38127, Defendant Sandra Wilson, RN ("Defendant Moore"), who resides at 978 Richland Drive, Memphis, Tennessee 38116, Defendant Pamela Washington, NP ("Defendant Washington"), who resides at 6974 Dashwood Drive, Memphis, Tennessee 38119, and JANE/JOHN DOES A-E (Collectively "Nurse Defendants") (Collectively with CCS "CCS Defendants") are Shelby County Jail nurses and nurse practitioners and, on information and belief, employees of CCS. At all times relevant to this Complaint, Nurse Defendants acted under color of law, performed government functions, were entwined in a symbiotic relationship with Shelby County, and were otherwise engaged in state action consistent with the Supreme Court's analysis in <u>Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n,</u> 531 U.S. 288 (2000). CCS is a "person" within the meaning of 42 U.S.C. § 1983. At all times relevant to this Complaint Nurse Defendants engaged in actions as employees and agents of CCS for which CCS is vicariously liable. As employees of CCS transacting business through CCS, service of process may be made by serving CCS' registered agent, Corporate Creations Network, Inc. at 205 Powell Place, Brentwood, Tennessee 37027 or by serving them at their residence as listed above.

8.     Plaintiff intends to conduct discovery to more specifically identify Defendants Jane/John Doe A-E in order to perfect service and reserves the right to amend his complaint to include said information.

9.     Defendant Steve Farris ("Defendant Farris") is a Shelby County Sheriff's Deputy. Service may be made upon Defendant Farris by serving Sheriff Floyd Bonner 201 Poplar

Avenue, Suite 902, Memphis, Tennessee 38103. Defendant Farris is named in this action both in his individual capacity and his official capacity.

10.     Defendant "Officer Newman"[1] ("Defendant Newman") is, on information and belief, a guard employed at the Shelby County Jail. Service may be made upon Jail Director Kirk Fields at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendant Newman is named in this action both in his individual capacity and his official capacity as the Sheriff of Shelby County. Plaintiff intends to conduct discovery to more specifically identify this defendant in order to perfect service and reserves the right to amend his complaint to include said information.

11.     Defendant "Lieutenant Varner"[2] ("Defendant Varner") is, on information and belief, a guard and supervisor, employed at the Shelby County Jail. 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Service may be made upon Jail Director Kirk Fields at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendant Varner is named in this action both in his individual capacity and his official capacity as the Sheriff of Shelby County. Plaintiff intends to conduct discovery to more specifically identify this defendant in order to perfect service and reserves the right to amend his complaint to include said information.

12.     Defendants Jane/John Doe 1 through 10 are employees of the Shelby County Jail and Shelby County Sheriff's Department who participated in Plaintiff's arrest, transport from Bartlett City Jail to the Shelby County Jail, and Plaintiff's intake into the Shelby County Jail, and/or Sheriff's deputies to whom Plaintiff or any person on Plaintiff's behalf protested his

---

[1] "Officer Newman" is a jail guard identified in Plaintiff's CCS records. "Officer Newman" was on duty at the Shelby County Jail on January 7, 2018.

[2] "Lieutenant Varner" is Officer Newman's supervisor as identified in Plaintiff's CCS records. "Lieutenant Varner" was on duty at the Shelby County Jail on January 7, 2018.

innocence or mistaken identity or who knew or should have known that Plaintiff was wrongfully detained or incarcerated. Service may be made upon Sheriff Floyd Bonner and/or Jail Director Kirk Fields at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendants John Doe 1-10 are named in this action both in their individual and official capacities as employees and agents of the Shelby County of the Shelby County Jail and/or Shelby County Sherriff's Department. Plaintiff intends to conduct discovery to more specifically identify this defendant in order to perfect service and reserves the right to amend his complaint to include said information.

13.    Defendants Shelby County, Farris, Newman, Varner and Jane/John Does 1-10 are referred to hereinafter as the "County Defendants."

14.    This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Tennessee. As a result, this Court has personal jurisdiction over Defendant pursuant to TENN. CODE ANN. §§ 20-2-214(1) and (2) and (6) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against them arise from its transaction of business within Tennessee and on the grounds that they have committed a tortious act within Tennessee. Furthermore, Defendants' contacts and actions were directed toward Tennessee and thus warrant the exercise of personal jurisdiction over it pursuant to TENN. CODE ANN. § 20-2-225(2).

**IV.**

**FACTUAL ALLEGATIONS**

15.    Plaintiff Joe Macklin is a 75-year-old retiree who suffers from asthma, congestive heart failure, chronic obstructive pulmonary disorder ("COPD"), and post-traumatic stress disorder ("PTSD"), which is the result of wounds sustained in combat in Vietnam for which he was awarded the Bronze Star and Purple Heart. He is married with two children and has served

his church as a deacon for ten (10) years. His criminal record consists only in misdemeanors, with his last arrest occurring twenty-three (23) years ago in 1995. He is not now on probation or parole, nor has he been within the last two decades.

16.    As of January 1, 2018, Mr. Macklin suffered from COPD for which he required regular and consistent treatment, specifically he required prednisone injections every other day and required the use of medical oxygen when he slept and when he found breathing difficult. He was under a physician's order to keep an albuterol inhaler on his person, and he required the use of this albuterol inhaler regularly.

17.    Mr. Macklin also suffers symptoms of PTSD when in stressful or traumatic situations, including night terrors, severe panic, fear, and uncontrollable emotional distress. Situations of confinement and feeling trapped or unable to escape are especially traumatic for Mr. Macklin because the initial trauma that caused his PTSD took place when he was shot by sniper fire and pinned down while wounded for two (2) days at the Battle of Ia Drang during the Vietnam War. At all times relevant to this complaint, situations of confinement have triggered Mr. Macklin's PTSD.

18.    By contrast, John Malone is a convicted felon and drug dealer who is substantially younger than Joe Macklin. On May 15, 2015, John Malone pled guilty to charges relating to heroin dealing for which he was sentenced to six years' probation. On information and belief, on September 20, 2017, John Malone was arrested in DeSoto County, Mississippi for dealing heroin again. At all times relevant to this Complaint John Malone was incarcerated in DeSoto County, Mississippi, a fact readily ascertainable by the County Defendants. As a result of his arrest in DeSoto County, the Tennessee Department Correction filed a petition for the revocation of John Malone's suspended sentence and issued a warrant for the arrest of John Malone. Unfortunately,

due to an error, the Tennessee Department of Probation and Parole issued the warrant using Plaintiff's RNI number. The warrant, in all other respects, identified John Malone. The only thing that Mr. Macklin has in common with Mr. Malone is that both are African-American males and that their RNI numbers are sequential, Mr. Macklin's ending in 5424 and Malone's ending in 5425.

19.    The face of the warrant reads "John Malone," contains John Malone's TOMIS Number, contains John Malone's address, which is different from Plaintiff's, lists John Malone's height and weight, which are different from Plaintiff's, lists John Malone's Social Security Number, list's John Malone's date of birth, list's John Malone's FBI number, and lists John Malone's driver license number.

20.    None of these identifying characteristics are similar to those of Plaintiff. Accordingly, no reasonable person who was not deliberately indifferent could confuse John Malone with Plaintiff.

21.    The warrant also states "For further information or when Probationer is taken into custody, Please notify Probation/Parole Officer Dorsey, Jerry L. PPO II" and lists Officer Dorsey's phone number.

22.    On or about January 2, 2018, Plaintiff was driving in the City of Bartlett in Shelby County, Tennessee when he was pulled over due to an allegedly broken tail light.

23.    The Bartlett Police Department officer asked Plaintiff for his driver's license. Mr. Macklin's driver's license is a valid Tennessee Driver's License that states his name as "Joe Nathan Macklin" and provides his home address, his actual date of birth, his driver license number, and his identifying characteristics. Upon the officer's return to the car he instructed Mr.

Macklin to step out of the vehicle and placed him in handcuffs. He advised him that he was under arrest for a violation of his probation.

24.    The Bartlett Police Officer advised Plaintiff that the computer system reflected a warrant for his arrest.

25.    This shocked Mr. Macklin because Mr. Macklin was not on probation. He advised the officer of this. The officer informed him that there was a warrant for his arrest and took him to the City of Bartlett Jail where he was detained until Defendant Farris arrived and took Plaintiff into custody. Despite having adequate time, repeated opportunities, and all the resources necessary to quickly and easily ascertain that Plaintiff was not John Malone, Defendant Farris ignored Plaintiff's protests and, inexplicably, took Mr. Macklin into custody at the Shelby County Jail.

26.    When Defendant Farris filled out the arrest report, he had access to and presumably actually viewed the warrant for John Malone's arrest. The below table illustrates the differences in the information that Defendant Farris included on the arrest report and the information contained on the face of the warrant:

|  | **WARRANT FOR JOHN MALONE** | **ARREST REPORT FOR JOE MACKLIN** |
|---|---|---|
| **NAME** | JOHN MALONE | MACKLIN, JOE |
| **DATE OF BIRTH** | 01/02/59 | 04/05/1943 |
| **DRIVER LICENSE NO.** | 47320976 | 27013546 TN |
| **HEIGHT** | 6'1" | 5'11" |
| **WEIGHT** | 200 | 180 |
| **FBI NUMBER** | 491268T2 | NONE |

27.    The Social Security Numbers are not included in this Complaint, but they were listed on the warrant and arrest report and did not match.

28.     Anyone reading the warrant would have additionally seen that the warrant stated, on its face, that John Malone was arrested in DeSoto County, Mississippi and gave contact information for the appropriate person to call for information.

29.     Put simply, all that Defendant Farris had to do to confirm that Plaintiff was not John Malone was look at the face of the warrant. Even if he still was not sure, he had contact information for both John Malone's probation officer and the appropriate person at the DeSoto County jail to confirm that John Malone was already in custody.

30.     Mr. Macklin repeatedly protested his innocence as he was fingerprinted, photographed, and otherwise processed into the jail. During this time, he repeatedly provided his name, Social Security Number, and other clearly identifying information. Of necessity, he provided his Tennessee driver license, proving his identity.

31.     At multiple stages of the booking process, John Does 1 through 5 necessarily viewed the CJSI system that clearly showed that John Malone was not Plaintiff.

32.     During booking, as Mr. Macklin stood at the booking counter, a guard, John Doe 1, said to another guard, John Doe 2, that "that ain't the same guy." John Doe 2 shrugged in a caricature of deliberate indifference and continued the booking process.

33.     At some point during this process, not only did one of the jail personnel realize that Plaintiff was not John Malone, they made a point to correctly enter him into the system as "Joe Macklin." In order for this to occur, not only did someone have to realize that Plaintiff was not John Malone, they had to go out of their way to enter correct information into the computer system to ensure that Plaintiff was booked into jail under *his own identity*. In other words, they did not merely mistake Joe Macklin for John Malone, the jail personnel realized that they had Joe Macklin instead of John Malone and ensured that their records reflected that.

34.    Mr. Macklin repeatedly advised guards and jail officials that he was not on parole or probation, that he had not ever been convicted of a felony and that they could verify this by looking him up in the jail computer system.

35.    At the time of Mr. Macklin's arrest, a friend of Mr. Macklin's was present in the vehicle with him. He drove the vehicle to Mr. Macklin's home where he informed Mr. Macklin's son, Derron Macklin, who immediately called the Bartlett Police Department and spoke to a clerk who advised that they did not have a "Joe Macklin" in custody.

36.    Derron Macklin then called the Shelby County fugitive squad where he was advised that the deputy to whom he spoke was, in fact, the same deputy who arrested Mr. Macklin, on information and belief, Defendant Farris.

37.    Derron Macklin provided Defendant Farris his father's Social Security Number. Defendant Farris advised Derron Macklin that they were holding a "John Malone," not a "Joe Macklin."

38.    Defendant Farris advised Derron Macklin that neither he nor anyone else was required to take any steps to verify his identity other than to compare the RNI number on the warrant with that of the arrestee.

39.    Again, all that Defendant Farris had to do once he was advised, now by a third party, that Plaintiff was not John Malone, was to look at the face of the warrant, which would have revealed his error. Even if he still was not sure, he had contact information for both John Malone's probation officer and the appropriate person at the DeSoto County jail to confirm that John Malone was already in custody. In other words, Defendant Farris was so deliberately indifferent to Plaintiff's right to be free from unlawful arrest and detention that he could not be

bothered, while sitting in an office, to briefly read a two page document and make a phone call to verify that its contents were correct.

40.     Plaintiff avers that the warrant for John Malone does not constitute a "facially valid warrant" to arrest Plaintiff within the meaning of the Fourth Amendment because it contained virtually no information from which any reasonable person could reach the conclusion that the warrant was for Plaintiff's arrest, and not the arrest of another person.

41.     On information and belief, Defendant Farris stated a custom or policy of Shelby County when he stated that he was required to take no other steps to verify Plaintiff's identity, even when faced with a warrant that, on its face, was for another person. In the alternative, Shelby County's training and supervision of its employees is so deficient as to render that training a custom or policy in itself or to constitute deliberate indifference to the constitutional rights of its citizens.

42.     Subsequently, Mr. Macklin's wife, Gloria Macklin, went to the Shelby County Jail and brought Mr. Macklin's medications and oxygen tank. She asked to speak with the jail nurse. She did speak to one of the CCS Defendants, and she advised her that her husband suffered from severe COPD and that without his oxygen tank and prednisone shots that it could become virtually impossible for him to breathe, jeopardizing his life. The nurse took the information and advised that the jail would provide the medication and oxygen but that they could not take outside medications or equipment.

43.     On January 3, 2018, Defendant Wells compiled a medical record that reflected Mr. Macklin took prescription medication and had medical conditions including COPD and asthma. Defendant Wells was also aware that Mr. Macklin had recently been hospitalized due to an asthma attack.

44.    Defendant Wells also generated a written plan for Mr. Macklin  to have an albuterol inhaler to keep on his person. The albuterol inhaler was never ordered. In fact, the CCS/Shelby County Criminal Justice Center records from January 7, 2018, compiled by Defendant Wilson (then under the supervision of Defendant Washington), state "albuterol inhaler ordered 1/3/18 was not ordered in computer or given to Patient. Done at this time." In other words, Defendants' own records indicate that it took five days from the date of arrest and four days from the date on which it was ordered by a physician to provide Mr. Macklin medicine on which he depends to survive.

45.    Defendant Wells created a record of Mr. Macklin's medical needs, but despite having been just told that Mr. Macklin required an inhaler and other COPD treatment and monitoring, having a physical record indicating that Mr. Macklin required an inhaler, and examining Mr. Macklin, Defendant Wells failed to make this critical instruction in Plaintiff's records, instead noting only that he required a bottom bunk and a 2200 calorie diet.

46.    Mr. Macklin repeatedly experienced respiratory distress during this time.

47.    At no point during the five days that Mr. Macklin remained at the Shelby County Jail did anyone ever provide him medical care for his COPD until he approached respiratory collapse on January 7, 2018. He never received oxygen, never received his prednisone shots, and was not provided any other form of treatment despite having been seen by a nurse and requesting his medicine.

48.    Mr. Macklin, in respiratory distress, asked to see a nurse in the late night of January 6, 2018, or early morning of January 7, 2018. He was, at that time, in respiratory distress. Defendant Wilson, who made the sick call, made a record that indicated that she apparently took no actual vitals and did not take Mr. Macklin for treatment or further assessment

despite his statement, which she did record, "I have asthma and COPD. I need to see doc." Defendant Wilson noted that the jail had failed to provide Mr. Macklin his inhaler and allowed him to use one but did not, apparently, let him keep it on his person as instructed.

49.     By 7:03 p.m. that evening, Plaintiff presented to Defendant Moore with symptoms of wheezing and shortness of breath. Defendant Moore assessed him with severe asthma exacerbation with imminent respiratory collapse, as his SPO2 was less than 90. Mr. Macklin was given a breathing treatment and instructed to "contact medical through POD officer if exacerbation returns."

50.     Later that evening, Defendant again neared respiratory collapse. Plaintiff reported his condition to Defendant Newman who deliberately ignored him until Mr. Macklin's respiratory distress was so severe that no one, not even someone as deliberately indifferent as Defendant Newman, could ignore it. Defendant Newman finally and grudgingly took Mr. Macklin to see Defendant Wilson around 11:05 p.m. Upon arrival, Defendant Newman reported that Mr. Macklin had been asking for another breathing treatment. Defendant Wilson had instructed Defendant Newman to call a "code white" for medical treatment if Mr. Macklin displayed difficulty breathing. He failed to do this, and then denied to Defendant Wilson that Mr. Macklin was having difficulty breathing.

51.     Unfortunately, Defendant Newman, due to his deliberate, conscious and intentional decision to substitute his own judgment for that of a competent medical professional, delivered Mr. Macklin to the clinic only after he was already in urgent respiratory distress. Mr. Macklin was assessed as having urgent asthma exacerbation and low oxygen saturation. By this point, Mr. Macklin was in respiratory failure.

52.    On January 8, 2018, at approximately midnight, Mr. Macklin was admitted to Regional One with COPD exacerbation and acute hypoxic respiratory failure. The Regional One records indicate that Mr. Macklin had been in respiratory distress for 3 days by that time.

53.    Mr. Macklin remained at Regional One in the custody of the Shelby County Defendants until January 10, 2018.

54.    After eight days of efforts, Derron Macklin was finally able to find someone to help his illegally and wrongfully detained father. Plaintiff appeared on a court docket on January 10, 2018, and Derron Macklin was able to speak to Jerry Dorsey, an employee of the Tennessee Department of Corrections. Mr. Dorsey is the community corrections supervision officer listed on John Malone's warrant.

55.    Mr. Dorsey informed Derron Macklin that the Department of Corrections was not only aware of Plaintiff's false arrest but that they had already and repeatedly notified the County Defendants that they had the wrong person in custody and that John Malone was already in custody in DeSoto County, Mississippi. Mr. Dorsey advised that he and his office had been trying to get Mr. Macklin released since they learned of his incarceration, but to no avail.

56.    On information and belief, the reason that even the probation officer who filed the petition for revocation of suspended sentence could not obtain Mr. Macklin's release is that Shelby County has a custom or unofficial policy of only releasing anyone at the behest of a judge. In effect, the policy of the Shelby County Jail is that no matter the circumstances or constitutional violation that Shelby County's agents know to be taking place, they simply leave wrongfully incarcerated persons in jail until such time as a hearing takes place and refuse to take responsibility for the due process rights of their inmates. Though not explicit, this practice is so widespread that it could not have been unknown to the Shelby County Sheriff, Jail Director,

16

Assistant Director of Jail Programs, and the other officials within the jail who bore responsibility for implementing policy. Plaintiff is aware of numerous other individuals who were wrongfully incarcerated under similar circumstances and who were compelled to wait days or more for release while jail personnel clearly knew that they should not have been incarcerated. Many of these individuals are the subject of other pending litigation.

57.    Derron Macklin appeared at January 10, 2018 court date with Mr. Dorsey already holding on his cell phone. Derron Macklin managed, with some effort, to speak to a prosecutor. On information and belief, Mr. Dorsey's supervisor had already contacted the office of the District Attorney General. The Deputy District Attorney advised the Court of the situation, and Mr. Macklin was finally ordered released.

58.    The order for Mr. Macklin's release contains the handwritten statement "arrested wrong person, Joe Macklin, should be John Malone."

59.    Mr. Macklin's nightmare did not end there. After being released from custody and discharged from Regional One on January 10, 2018, as a direct and proximate result of the deliberately indifferent conduct of the Defendants, Mr. Macklin's health was permanently and severely damaged. At the time of his arrest Mr. Macklin was active, able to care for himself, able to drive a car, and experienced relative freedom. Within days, Mr. Macklin was again experiencing respiratory distress far more severe than he had experienced prior to his arrest. The exacerbation to his condition was so severe that Mr. Macklin was admitted to hospice care.

60.    Mr. Macklin's condition remained so severe for the next six (6) months that he was compelled to remain in inpatient hospice care.

61.    Today, Mr. Macklin has been able to recover sufficiently to go home on at-home palliative care, but he no longer has the freedom that he enjoyed on the day of his arrest. He can

only leave his home with assistance, and his wife must provide substantial care for him. His quality of life has been substantially reduced, and it is more likely than not that the actions of Defendants have shortened his lifespan.

## VI.
## CAUSES OF ACTION

**COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST COUNTY DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES)**

62.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

63.     As alleged above Defendants Farris, Newman, Varner and Jane/John Does 1-10, acting under color of state law and with deliberate indifference, violated the rights of Plaintiffs and the Class Member secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

64.     It is clearly established that the detention of an individual without justification violates the Fourth Amendment. *Allen v. Thompson*, 14 F. Supp. 3d 885, 896 (W.D. Ky. 2014)("detaining someone without any justification violates a clearly established right to be free from unlawful dentition").

65.     It is clearly established that a law enforcement officer violates the Fourth Amendment when he mistakenly identifies an individual as a suspect when the individual does not match the suspect's description. *Webb v. United States*, 789 F.3d 647, 662 (6th Cir. 2015) ("[a] law-enforcement defendant is deliberately indifferent — and therefore not entitled to qualified immunity — if he mistakenly identifies an individual as a suspect when the individual does not match the suspect's description.") followed by: *Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 U.S. Dist. LEXIS 71965, at *39 (W.D. Ky. May 11, 2017).

66.    It is clearly established it constitutes a violation of the Fourteenth Amendment for jailers fail and refuse to ascertain that they are detaining the wrong individual for an extended period, in the face of protest, and where they have the ability to ascertain the error. *Gray v. Cuyahoga Cty. Sheriff's Dep't*, 150 F.3d 579, 582 (6th Cir. 1998); *Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 U.S. Dist. LEXIS 71965, at * (W.D. Ky. May 11, 2017).

67.    It is clearly established that there is a right to reasonable medical care under the Eighth and Fourteenth Amendments. *Bays v. Montmorency Cty.*, 874 F.3d 264, 269 (6th Cir. 2017).

68.    It would be clear to any reasonable person – let alone any public law enforcement officer or medical professional performing a government function – that these actions are wrongful and unconstitutional. As a result, Defendants Farris, Newman, Varner and Jane/John Does 1-10 are not entitled to the any affirmative defense of "qualified immunity" for their individual liability.

69.    Defendants Farris, Newman, Varner and Jane/John Does 1-10, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by deliberately ignoring Plaintiff's warrantless and unlawful detention and serious medical needs.

70.    To the extent that Defendants Farris, Newman, Varner and Jane/John Does 1-10 claim their subordinates are the actual persons who wrongfully detained Plaintiff and that they were not personally involved themselves, Defendants Farris, Newman, Varner and Jane/John Does 1-10 at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates. As a result, Defendants Farris,

Newman, Varner and Jane/John Does 1-10 are personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6ᵗʰ Cir. 1995)("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983).

71.    In the alternative, Defendants Farris, Newman, Varner and Jane/John Does 1-10, acting with deliberate indifference, failed to properly train and/or supervise their subordinates with respect to their responsibilities in ensuring that they do not unlawfully detain defendants and that they provide reasonable medical care, which proximately caused the above described constitutional rights violations.

**COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST COUNTY DEFENDANTS IN THEIR OFFICAL CAPACITIES)**

72.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

73.    As alleged above Defendants Farris, Newman, Varner and Jane/John Does 1-10 acting under color of state law, violated the rights of Plaintiff secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

74.    Defendants Farris, Newman, Varner and Jane/John Does 1-10, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by deliberately ignoring Plaintiff's warrantless and unlawful detention and serious medical needs.

75.    To the extent that Defendants Farris, Newman, Varner and Jane/John Does 1-10 claim their subordinates are the actual persons who wrongfully detained and that they were not personally involved themselves, Defendants Farris, Newman, Varner and Jane/John Does 1-10 at

least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates. As a result, Defendants Farris, Newman, Varner and Jane/John Does 1-10 are personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995)("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983).

76.    In the alternative, Defendants Farris, Newman, Varner and Jane/John Does 1-10, acting with deliberate indifference, failed to properly train and/or supervise their subordinates with respect to their responsibilities in ensuring that they do not unlawfully detain defendants and that they provide reasonable medical care, which proximately caused the above described constitutional rights violations.

### COUNT 3 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST SHELBY COUNTY)

77.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

78.    As alleged above Defendants Farris, Newman, Varner and Jane/John Does 1-10 acting under color of state law, violated the rights of Plaintiff secured by the Fourth and Fourteenth Amendments of the U.S. Constitution. Specifically, the Shelby County Sheriff, Shelby County Jail Director, Shelby County Assistant Director of Jail Programs, and the various other officials responsible for making policy with regard to the Sheriff's Department and Jail enacted policies and customs that were deliberately indifferent to and caused the violation of Plaintiff's constitutional rights.

79.     Further, Shelby County, acting by and through its policymakers, officers, and agents, and acting under color of state law, violated the rights of Plaintiff secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

80.     Defendant Shelby County, acting by and through its policymakers, officers, and agents with deliberate indifference, implemented customs and policies and/or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the individuals who violated the above described constitutional rights of Plaintiff. These policies and customs directly and proximately caused the above described constitutional rights violations resulting in Plaintiff's warrantless and unlawful detention and serious medical needs.

81.     In the alternative, Defendant Shelby County, acting by and through its policymakers, officers, and agents with deliberate indifference, failed to properly hire or train its agents and employees with respect to their responsibilities in ensuring that they do not unlawfully arrest or detain defendants and that they provide reasonable medical care, which proximately caused the above described constitutional rights violations.

**COUNT 4 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST CCS DEFENDANTS)**

82.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

83.     At all times relevant to this Complaint, the CCS Defendants acted under color of law, performed government functions, were entwined in a symbiotic relationship with Shelby County, and were otherwise engaged in state action consistent with the Supreme Court's analysis in Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288 (2000). CCS is a "person" within the meaning of 42 U.S.C. § 1983.

84.     CCS Defendants, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by deliberately ignoring Plaintiff's serious medical needs.

85.     To the extent that CCS Defendants claim their subordinates are the actual persons who wrongfully detained Plaintiffs and the Class Members and that they were not personally involved themselves, CCS Defendants at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates. As a result, CCS Defendants are personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995)("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983).

86.     Defendant CCS, acting by and through its policymakers, officers, and agents with deliberate indifference, implemented customs and policies and/or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the individuals who violated the above described constitutional rights of Plaintiff. These policies and customs directly and proximately caused the above described constitutional rights violations resulting in Plaintiff's serious medical needs.

87.     In the alternative, Defendant CCS, acting by and through its policymakers, officers, and agents with deliberate indifference, failed to properly train its agents and employees with respect to their responsibilities in ensuring that they provide reasonable medical care, which proximately caused the above described constitutional rights violations.

## COUNT 5 – HEALTH CARE LIABILITY (AGAINST CCS)

88.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

89.    This Court has jurisdiction over the subject matter of this action as it arises under the Tennessee Healthcare Liability Act and the Common Law of the State of Tennessee.

90.    All acts complained of herein occurred in Shelby County, Tennessee.  All acts occurred within one year of the date of filing and/or discovery, and in accordance with the statutory requirement found at Tenn. Code Ann. § 29-26-121(a).

91.    Plaintiff complied with the notice requirements set forth in Tenn. Code Ann. § 29-26-121, et seq., and mailed those letters via certified mail, return receipt requested, on October 17, 2018, which is evidenced by the attached Affidavit of Compliance.  The documentation required by Tenn. Code Ann. § 29-26-121 is attached hereto as Exhibit A and is incorporated herein by reference.

92.    Plaintiff timely complied with the notice requirements of Tenn. Code Ann. § 29-26-121 by giving pre-suit notice to CCS at least sixty (60) days before this Complaint was filed.

93.    Pursuant to Tenn. Code Ann. § 29-26-122, a certificate of good faith is being filed contemporaneously with this Complaint and is incorporated herein by reference and attached as Exhibit B.

94.    CCS is vicariously liable for the acts of its agents and employees, including, but not limited to, the other CCS Defendants.

95.    At all times relevant to this Complaint, CCS owed Plaintiff a duty of care to provide medical care that met the standard of care in Shelby County, Tennessee and to arrange

for him to be evaluated by medical staff (on-site or off-site, as appropriate) when necessary. CCS

was responsible for the continuity of care received or not received by Plaintiff.

96.    CCS breached that duty of care in the following ways:

(a)    CCS Defendants failed to properly annotate Plaintiff's diagnosis
and necessary treatment, which was known to CCS or its agents, in
Plaintiff's records;

(b)    CCS Defendants failed to properly advise Shelby County Jail
personnel on Plaintiff's condition and treatment;

(c)    CCS Defendants failed to properly evaluate, diagnose, treat and
monitor Plaintiff's condition;

(d)    CCS Defendants failed to implement and provide an appropriate
treatment plan;

(e)    CCS Defendants failed to follow their own treatment plan;

(f)    CCS Defendants failed to ensure that Plaintiff was provided access
to medications and therapies that they knew or should have known were
necessary for the treatment of his condition; and

(g)    CCS Defendants unreasonably delayed Plaintiff's transport to a
fully-equipped emergency medical facility.

97.    These deviations from the standard care resulted in liability for CCS under the

Tennessee Healthcare Liability Act and are the direct and proximate cause of Plaintiff's

previously-described physical injuries, pain, suffering, and emotional distress.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, the named Plaintiff and the Class Members demand judgment against

Defendants on each Count of the Complaint and pray for the following relief:

1.    Issue service of process and serve the Defendants;

2.    Permit Plaintiff leave to amend this Complaint after reasonable discovery;

3.    Empanel a jury to try this matter;

4.      Award Plaintiff compensatory damages in an amount of not less than $1,000,000 for Counts 1 to 4;

5.      Award Plaintiff compensatory damages in an amount to be determined by a jury for Count 5;

6.      Award Plaintiff punitive damages against individual Defendants and CCS for Counts 1 and 4;[3]

7.      Award Plaintiff his reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

8.      Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

9.      Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENN. CODE ANN. § 47-14-123 in amount according to the proof at trial; and

10.     Grant the Plaintiff such further relief as the Court may deem just and proper.

Respectfully submitted,


/s/ *Brice M. Timmons* _____
Brice M. Timmons (#29582)
William E. Cochran, Jr. (#21428)
BLACK MCLAREN JONES RYLAND & GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN 38117
(901) 762-0535 (Office)
(901) 762-0539 ( Fax)
btimmons@blackmclaw.com
wcochran@blackmclaw.com

---

[3] Plaintiff is not seeking punitive damages against Shelby County, any Defendant in their official capacity, or under any state law claim which are the claims set forth in Counts 2, 3, and 5.

26